UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| FRANK W. SALAS, ) | |
| Plaintiff, ) | |
| ) | No. 1:12-cv-314 |
| -v- ) | |
| ) | HONORABLE PAUL L. MALONEY |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| Defendant. ) | |
| _____ ) | |

## OPINION AND ORDER MODIFYING REPORT AND RECOMMENDATION

Before this court is a Report and Recommendation issued by Magistrate Judge Carmody (ECF No. 16) recommending that the court affirm the Commissioner of Social Security's decision to deny Frank W. Salas's claim for disability insurance benefits. Plaintiff Salas has filed timely objections to the magistrate judge's recommendation. For the reasons discussed below, the court will adopt the Report and Recommendation and affirm the Commissioner's decision.

**I.    STANDARD OF REVIEW**

Parties have 14 days to file written objections to the proposed findings and recommendations in a magistrate judge's report and recommendation ("R&R"). 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). A district court judge reviews *de novo* the portions of the R&R to which objections have been filed, and may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Only specific objections are entitled to *de novo* review under the statute, *see Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (per curiam), and the statute does not "positively require[] some lesser review by the district court when no objections are filed." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Failure to object to an issue waives that issue, along with the party's right to appeal that issue. *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005); *see Arn*, 474 U.S. at 155 (upholding the Sixth Circuit's practice).

"This court's review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is "more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). So long as the Commissioner's decision is supported by substantial evidence, this court must affirm, even if substantial evidence also supports the opposite conclusion and even if the court would have decided the matter differently. *See Smith v. Chater*, 99 F.3d 780, 781–82 (6th Cir. 1996).

## II.  DISCUSSION

In his objection, Mr. Salas argues that the ALJ erred in rejecting the opinions of several of his treating physicians. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529–30 (6th Cir. 1997). A treating physician's opinion on the "nature and severity of [a claimant's] impairment" is given controlling weight if it is both (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). With that said, a treating physician's opinion that someone is "'disabled' or 'unable to work'" is not considered a medical opinion, and the Commissioner need not defer to such an opinion. *Id.* § 404.1527(d)(1).

### A.  Dr. Duncan

First, Mr. Salas argues that the ALJ erred in rejecting the opinions of Dr. Margret Duncan. Specifically, Mr. Salas argues that the ALJ should have fully accepted Dr. Duncan's September

2

2011 opinions, as presented in a "Diabetes Mellitus Residual Functional Capacity Questionnaire" and a "Fibromyalgia Residual Functional Capacity Questionnaire."[1] (AR396–403.) On these forms. Dr. Duncan listed Mr. Salas's diagnoses as including diabetes mellitus, fibromyalgia, a vitamin D deficiency, and mild cervical and lumbar degenerative disease. (AR396.) She opined that Mr. Salas's pain and other symptoms "frequently" became severe enough to interfere with the attention and concentration needed to perform even simple work tasks, that he could not walk even one city block without rest or severe pain, that he could neither sit nor stand for more than 30 minutes at a time, and that he could not stand or walk even two hours out of an 8-hour day. (AR397.) Dr. Duncan indicated that Mr. Salas "has full strength and ability" to perform a number of physical actions, "albeit [with] reported pain." (AR403.) She stated that Mr. Salas "may have mild/mod[erate] limitations" on his ability to reach, handle, and finger objects. (AR403.) And she opined that Mr. Salas was incapable of even low-stress jobs. (AR397.)

With that said, Dr. Duncan limited her opinions in several ways. For instance, she stated that she was unable to estimate Mr. Salas's ability to sit during the work day, as this was "difficult to assess." (AR397.) She also stated that Mr. Salas would need to take unscheduled breaks during his work day, but admitted that the length and frequency of these breaks was "uncertain." (AR398.) More troubling was Dr. Duncan's admission that she was "uncertain" and "unsure" whether Mr. Salas is a malingerer. (AR396.) She later stated that she "doubt[s]" that Mr. Salas is a malingerer, but it is "possible." (AR401.) Dr. Duncan repeatedly noted the difficulty of assessing Mr. Salas's degree of disability. On the fibromyalgia form, she stated that it is "uncertain" whether Mr. Salas's

---

[1] Mr. Salas admits that the ALJ properly rejected Dr. Duncan's May 11, 2009 and December 23, 2009 opinions (AR270 and 331, respectively) as conclusory.

3

impairments are reasonably consistent with the symptoms and functional limitations that she indicated elsewhere on the form. It is "[d]ifficult," she says, "to determine how much the emotional impairment can explain his complaints. Fibromyalgia lacks objective testing to confirm reasonable reports of impairment." (AR401.) In the first form, Dr. Duncan explained further:

> [Mr. Salas] seems to have difficulty coping, and he has a very poor pain tolerance. His personality, reported pain and poor coping skills would truly affect his ability to work, but it is very difficult to assess the degree of disability since he lacks objective measurements to support his complaints.

(AR399.)

The ALJ gave this opinion "some weight, while noting it is internally [in]consistent with her progress notes."[2] (AR21.) This is a fair characterization of the record. The notes on Mr. Salas's condition in Dr. Duncan's progress notes vary wildly from appointment to appointment. On November 29, 2010, Dr. Duncan notes that Mr. Salas "[w]alks the dog a lot for exercise" (AR380), though he later informed her that his pain prevented him from walking. (AR378.) In August 2010, Dr. Duncan reported that his strength was normal (AR383), but several months later, Mr. Salas claimed he was too weak to lift a gallon of milk. (AR380.) In February 2011, the last examination in the record before Dr. Duncan filled out the forms above, she noted that she "[s]pent several minutes trying to . . . explain how [Mr. Salas's] perception of pain is skewed and that the pathology in his body is not as bad as he perceives as consistent with fibromyalgia and the exam of many specialists." (AR377.) Nowhere does Dr. Duncan attempt to reconcile these statements or explain

---

[2] The ALJ's opinion actually states that the opinion is "internally *consistent* with her progress notes" (AR21 (emphasis added)), but this statement only makes sense if the ALJ intended to say that the opinion was "internally *in*consistent." The magistrate judge read the ALJ's statement in this way, and Mr. Salas has not objected, so this court will read it the same way.

what changed in Mr. Salas's condition during this time. Nor does she state whether she had any reason to believe Mr. Salas's contradictory claims. Yet her later opinions appear to have had little basis aside from Mr. Salas's self-reported symptoms. As Dr. Duncan noted at the time, "it is very difficult to assess the degree of disability since he lacks objective measurements to support his complaints." (AR399.)

While these factors may not be sufficient to entirely discount Dr. Duncan's opinion, the ALJ did not do so. Instead, she gave it "some weight," accepting it in part and rejecting only the more extreme claims of inability to function. Given the tentative nature of Dr. Duncan's claims and the unexplained inconsistencies between those claims and the rest of her treatment notes, the ALJ was not required to give that opinion any greater weight.

Mr. Salas also argues that the ALJ's treatment of Dr. Duncan's opinion erred in several other respects, but each of these arguments fails as well. First, several parts of Dr. Duncan's diabetes form refer to the fibromyalgia form. The ALJ, not realizing that both forms were presented as part of the same exhibit, noted that the record did not contain any fibromyalgia form. (AR21.) Salas objects to the ALJ's "careless review," arguing that this error was no reason to refuse to credit a treating physician's opinion. But as the magistrate judge properly pointed out, this error was insignificant. The evidence here does not suggest that the ALJ failed to review the fibromyalgia form, but rather that she failed to realize that the document she was reviewing included both forms. In any case, it does not appear that the ALJ used this as a reason to discount Dr. Duncan's opinion. She placed this statement in a footnote, with the context suggesting that it was an informative side point, not a reason to reject the doctor's opinion.

Mr. Salas also points to the ALJ's statement that Dr. Duncan's opinion "does not suggest any

5

exertional limitations," arguing that this statement is false, as Dr. Duncan opined that Salas could not stand for more than two hours per day. Salas reads too much into the ALJ's wording here. When read in context, the ALJ's comment clearly refers only to the questions about how often Mr. Salas can lift different weights, carry, twist, stoop, crouch, and climb ladders or stairs. Nothing in the ALJ's opinion suggests that she ignored the rest of Dr. Duncan's opinion, and so the wording she used to describe part of it is inconsequential.

Relatedly, Mr. Salas objects to the ALJ's claim that Dr. Duncan "opines that it is difficult to assess his condition given the lack of objective support for his complaints." This is false, Salas argues. Dr. Duncan did not say that there was no objective support; rather she said only that there were no "objective measurements to support his complaints." In any case, according to Mr. Salas, at best this is a lack of corroboration, not inconsistency. Like the last argument, Mr. Salas reads too much into the ALJ's statement here. The ALJ discounted Dr. Duncan's opinion because it was inconsistent with her treatment notes, not because it lacked objective support. Thus, even if the ALJ incorrectly described Dr. Duncan's statement, that error would not affect her decision to partially reject that opinion.

Salas next argues that Dr. Duncan's questions about whether he was malingering should not be used to reject her opinion, because such uncertainties are not inconsistent with Dr. Duncan's opinions. But this argument confuses matters. The ALJ did not discount Dr. Duncan's opinion because of her questions about malingering; Dr. Duncan did that. As discussed above, her opinion repeatedly noted that she was uncertain about her conclusions for various reasons. The ALJ need not ignore these signs and pretend instead that Dr. Duncan was entirely convinced of her conclusions. In any case, to the extent that Dr. Duncan felt confident enough to opine on Mr. Salas's

condition, the ALJ properly weighed that opinion against the other evidence in the record, for the reasons discussed above.

Finally, Mr. Salas objects that the Commissioner and the magistrate judge improperly tried to support the ALJ's decision using reasons that the ALJ herself did not rely on. He first objects that the Commissioner argued that the diabetes and fibromyalgia forms were due less weight because they were forms provided by Mr. Salas's attorney. But this objection holds no weight, because the magistrate judge did not adopt this argument in her decision.

Mr. Salas's second argument is more successful. He objects to the magistrate judge's pointing out that Dr. Duncan's September 2011 opinion was given more than two years after Mr. Salas's insured status expired. While this is true, the ALJ did not use this fact in evaluating Dr. Duncan's opinions. "It is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983). The magistrate judge therefore should not have referred to this fact in evaluating the ALJ's decision. Nonetheless, for the reasons discussed above, the ALJ's treatment of Dr. Duncan's opinion was proper and stands on its own even without this additional reason. The court will therefore modify the R&R to remove the new arguments, but will not change the outcome of the case based on this error alone.

   **B. MED-1 Doctors**

Mr. Salas also argues that the ALJ erred by rejecting the opinions of MED-1 Holland doctors Dan Kreuzer and Duane Wisk. In particular, he points to the limitations first imposed on December 18, 2007: no lifting more than 40 pounds and limited "repetitive looking up/down." (AR251.) The MED-1 doctors continued these restrictions on January 10, 2008 (AR248–49) and again on January

22 (AR243–44), the last time Mr. Salas treated with MED-1.

The ALJ noted these limitations, but "assign[ed] little weight to them," explaining that "[a]ll restrictions are expired and each one was only accompanied by cursory explanations, which provide little, if any insight into the underlying rationale.  In any event, more recent medical opinions have replaced these initial, temporary restrictions."  (AR20.)

Mr. Salas objects strenuously to this conclusion.  The MED-1 doctors' restrictions did not expire, he claims.  The doctors included no time limits on their notes, and so they should be treated as open-ended restrictions on Mr. Salas's ability to function.  Further, the doctor that Mr. Salas went to after leaving MED-1 understood the "repetitive looking up/down" restriction to be continuing, and no doctor ever found that Mr. Salas *was* able to repetitively look up and down.  Therefore, this restriction is still in effect, uncontradicted, and the ALJ erred by disregarding it.

This argument, frankly, is absurd.  A restriction is not deemed everlasting simply because the doctor does not place an end date on it.  This principle is particularly evident here.  The MED-1 doctors saw Mr. Salas a number of times between October 2007 and January 2008.  Each time, they imposed certain restrictions on Mr. Salas and scheduled a follow-up visit.  (*See*, *e.g.*, AR239, 235, 230, 228, 225, 222, 260, 256, 252.)  These restrictions changed over time, yet the doctors did not see a need to expressly disavow their previous restrictions each time their recommendations changed.  Indeed, even when those restrictions remained the same, the doctors took care to restate them in the next appointment's summary.  (*See, e.g.*, AR225, 262, 248, 243.)  This shows that the MED-1 doctors did not consider their own restrictions to be open-ended.  Further, by the time the doctors made their final restriction, they had resolved most of their original diagnoses, leaving (by Mr. Salas's admission) only his neck strain as the reason for limiting his need to look up and down

repeatedly.  (*See* AR243.)  By their very nature, neck strains are temporary, and Mr. Salas's was already listed as "improved" by January.  (*Id.*)  It beggars belief to claim that the MED-1 doctors imposed a permanent restriction on Mr. Salas due to this injury alone.  This is true regardless of whether Mr. Salas's next doctor imposed similar restrictions on him.  (*See* AR301–05 (imposing restrictions of "no lifting over thirty pounds, minimum bending or twisting of the neck").)

In any case, as the ALJ properly noted, later medical opinions have replaced the MED-1 doctors' opinions.  Indeed, Dr. Duncan—who Mr. Salas relies on so heavily above—included no "repetitive looking" restrictions on Mr. Salas.  Nor did the agency's medical records reviewer.  Mr. Salas suggests that this is at most a lack of corroboration rather than inconsistency.  But there is no evidence that either Dr. Duncan or the records reviewer simply ignored the possibility of restrictions related to Mr. Salas's neck, or that they otherwise intended to exclude any such restrictions from the scope of their opinions.  Instead, the natural reading of these later documents is that Dr. Duncan and the medical records reviewer found no basis for restricting Mr. Salas from repetitively looking up and down.  This is inconsistent with the MED-1 doctors' earlier restrictions.

For these reasons, the ALJ had more than adequate grounds to give the MED-1 doctors's restrictions less than controlling weight.  Mr. Salas's objections here are therefore OVERRULED.

As in his first set of arguments, Mr. Salas does properly alert the court to an argument raised for the first time by the magistrate judge.  Here, the R&R finds in the alternative that the MED-1 opinion "is not inconsistent with the ALJ's RFC determination."  The court will modify the R&R to remove this new argument, but as above, this alternative basis for the magistrate judge's ruling will not affect the result here.

## **ORDER**

For the reasons discussed above, **IT IS HEREBY ORDERED** that the report and recommendation (ECF No. 16) is **MODIFIED** as follows:

1. By deleting the following two sentences from the top of page 15:

   Moreover, Dr. Duncan did not complete the forms in question until more than two years after the expiration of Plaintiff's insured status. The doctor does not indicate in these forms the extent to which her opinions concern the period of time prior to the expiration of Plaintiff's insured status.

2. By replacing the following three sentences, from the top of page 16:

   While the Court finds that the ALJ's rationale is supported by substantial evidence, more significantly, the Court finds that Dr. Wisk's opinion is not inconsistent with the ALJ's RFC determination. In his opinion, the ALJ limited Plaintiff to light work and only "occasional postural activities," both of which are consistent with the limitations articulated by Dr. Wisk. Thus, whether the ALJ articulated good reasons for discounting Dr. Wisk's opinion is irrelevant as such is not inconsistent with the ALJ's RFC determination.

   with the following:

   The Court finds that the ALJ's rationale is supported by substantial evidence.

The court **ADOPTS** the modified report and recommendation as the opinion of the court.  The Commissioner's decision is hereby **AFFIRMED**.

**IT IS SO ORDERED.**


Date:   September 12, 2013                        /s/ Paul L. Maloney
                                                  Paul L. Maloney
                                                  Chief United States District Judge